THOMAS A. MORRISON, THOMAS H. MORRISON AND GAR-
DINER S. HUTCHENS v. THE INHABITANTS OF THE
TOWNSHIP OF BERNARDS, IN THE COUNTY OF SOM-
ERSET.

1. Commissioners being authorizeu to borrow money " on the faith and
   credit" of a township, and to execute bonds therefor "under their
   hands and seals respectively"—*Held*, that power was thereby given
   to make such bonds in the name of the township.
2. *Held further*, that a suit would lie on such bonds, although the act
   provided a particular mode of raising the money to pay them.
3. The statute further providing that no bonds should be issued by such
   commissioners, without the written consent of a majority of the tax
   payers, and which consent was required after being proved to be filed
   in the county clerk's office—*Held*, that the declaration must show a
   compliance with such requirements.
4. The statute also required such bonds to be certified "across" their
   face by the county clerk, to have been registered, and declared that
   no bonds should be valid unless so registered; *held*, that it must also
   appear in the declaration, that such acts have been done.

On demurrer to declaration.

The action was in debt, and the declaration stated that the
defendants, on the 1st of January, 1869, by and under the
hands and seals of J. H. A., J. G. and O. R. T., commissioners
of said township, duly appointed and sworn as directed by the
provisions of a certain act of the legislature of New Jersey,
entitled " An act to authorize certain towns in the counties of
Somerset, Essex and Union, to issue bonds and take stock in
the Passaic Valley and Peapack Railroad Company," ap-
proved April 9th, 1868, made their bond, &c., and did thereby
acknowledge that they owed to the bearer, &c. That it was
by said bond then and there declared that the said bond was
one of a series of like tenor, amounting in the whole to the
sum of $127,000, issued on the faith and credit of said town-
ship, in pursuance of the act aforesaid.

There were averments that there were certain coupons

attached to said bond, and the breach assigned was that these coupons when presented for payment were not paid.

There was a *penal* count, similar in form and substance, founded on another of this series of bonds.

The demurrer was general.

Argued at February Term, 1873, before BEASLEY, Chief Justice, and Justices BEDLE, DALRIMPLE and DEPUE.

For the plaintiffs, *C. Parker.*

For the defendants, *J. Vanatta.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The first fault found with this declaration is, that it does not show that the bonds sued on are those of the inhabitants of the township of Bernards, the defendant in the action. The theory of the counsel of the defendant seems to be, that the act of the 9th of April, 1868, (*Pamph. Laws, p.* 915,) which relates to this subject, does not authorize the commissioners to create these obligations in the name of the township.

But this construction, I think, is not consonant either with the language or spirit of the act. The general scope of this law is this: It provides for the appointment, in a prescribed mode, of three commissioners, who are empowered "to borrow on the faith and credit" of the township, certain sums of money, "and to execute bonds therefor, under their hands and seals respectively." This language is clearly indicative of the legislative purpose to bind the township to the payment of the money thus to be borrowed. This money was designed for the use of the township, in the construction of what must be deemed a public work, if we are to give the faintest semblance of legality to the law itself. So the loan is to be obtained on the faith and credit of the township, a pledge which seems naturally to imply that the obligation of payment is to be put upon the corporate body. And a similar implication, but one of greater force, arises from the direc-

tion that bonds are to be given under the hands and seals of the commissioners, for an instrument of that kind cannot be created without the presence of an obligor; and, indeed, it seems like a solecism to say that the statute calls for the making of a bond, but that nobody is to be bound by it. Whether suits in the ordinary form will lie upon the instruments thus contemplated and authorized, or whether the only remedy is specifically appointed by the statute itself, is a question which will be considered in the sequel, but which is entirely distinct from the inquiry as to the sort of obligation which it was intended the commissioners should issue. The mere fact that the seals of the commissioners are to be used, is of no significance, as the form of the transaction was altogether under the control of the legislature. It was undeniably the intention to bind somebody, and as it cannot be pretended that the commissioners were bound, that somebody can be none other but the township. There are other expressions and indications in this act which are equally demonstrative of the same intention, as that just stated, but it does not appear to be necessary to pursue the subject further. These instruments in suit, I think, were properly made in the name of the corporation.

In the second place, it is insisted that, on the admission that the bonds in question are to be regarded as the obligations of the township, a suit will not lie upon them, because the statute itself prescribes the mode in which the money is to be raised, and that it cannot be raised in any other way. In the language of the brief of counsel, the proposition thus asserted is expressed in this form : " Where the right is given by a statute which prescribes a remedy, the remedy thus prescribed is the only one that can be had."

Among the cases cited in support of this doctrine, is that of *Reock* v. *The Mayor, &c., of Newark,* 4 *Vroom* 129. But I think that neither this authority, nor any of the others which are referred to, are at all applicable in the present case. The general rule undoubtedly is, that when the right

which is to be vindicated is altogether statutory, and a remedy, in case of a withholding of such right, is prescribed, such remedy can alone be resorted to. Such was adjudged to be the case in the decision just cited from 4 *Vroom*.

But in the present instance, there is a contrary intent apparent on the face of this statute. Why is a bond to be given to the lender of the money, if a suit cannot be brought upon it? The statute exacts a formal promise, under seal, to pay the specified sum at a particular time, and the idea seems inadmissible that this is to be looked upon as a mere formality, destitute of all practical effect. The capacity to support a suit, is a part of the nature of sealed instruments, stipulating for the payment of money. When, therefore, the statute directs a bond to be given, it substantially declares that an action shall lie if such obligation should not be redeemed. It would be quite as reasonable to hold that the seals on these bonds do not import a consideration, as it would be to hold that the bonds themselves are not enforceable by suit. I can see nothing in the provisions of this act which will prevent these instruments from being put into effect according to the qualities usually inherent in that class of obligations to which they belong. The statutory regulations relating to the mode of the assessment of the moneys, and the imposition of the burthen upon particular lands, can be carried into full effect. But with these matters, the holder of the bonds has no connection. In this particular, I find nothing exceptionable in a suit upon these instruments.

A third objection is urged against the sufficiency of this pleading. This arises from the fact that the plaintiff has not shown the legal power of the commissioners to make the bonds which form the basis of the action.

The second section of the statute in question empowers the commissioners to borrow money, but provides that "no such debt shall be contracted or bonds issued by said commissioners, &c., until the written consent shall have been obtained of a majority of the tax payers." There is a further direction, that the signatures to such consent shall be proved by

one of the commissioners, and that the fact that the persons signing such consent are a majority of the tax payers of such township, and represent a majority of the real property of such township, shall be proved by the affidavit of the assessor, and that such authentications shall be filed in the office of the clerk of the county, and that they, or a certified copy thereof, shall be received in evidence of the facts therein contained in any court of this state.

It thus appears that these commissioners had no authority to issue the bonds in controversy, unless the consent of the requisite number of tax payers was given, and it is insisted, that as this consent is an essential element in the plaintiff's case, such fact must appear in the declaration.

The counsel of the plaintiff, assailing this position, replies that it is shown that these bonds were formally made and issued, and have fairly come into the possession of the present holder, and that the defendant is estopped from denying that the conditions existed which entitled its own officers to create these instruments. But I cannot assent to this view. There are, undoubtedly, instances to the effect that a corporation will not be allowed to gainsay the act of their officers on the pretext of a want of competency to do the particular act in question. But this rule obtains only when the authority which is challenged depends upon the existence of facts extrinsic of the charter, the knowledge of which is accessible only to the corporators, and which are not known to the party dealing with the corporation. And it may also be doubted whether the principle is ever applicable except when the officer who ostensibly gives the assent of the company to any transaction, is the general agent of the corporate body. But this defence, that the officer has done an act in contravention, or in excess of the chartered right, will not be permitted to prevail when the person in whose favor such act has been done, is presumed to have been ignorant of such transgression. But when the provisions of a statute have been infringed or disregarded by public officers, and such provisions are publicly known, the statute must have effect,

and no estoppel arising from such official misconduct can be interposed. This is the doctrine laid down, with marked emphasis, by Lord Denman, in *Regina* v. *White*, 4 *Ad. & El.* (*N. S.*) 101, and such doctrine can never be more applicable than in the present case. The statute in question is a public act; the commissioners are the special, 'and not the general agents of the corporate body, and their capacity to issue these bonds is made dependent on the vote of a specified body of persons. In general, those dealing with a special agent must inform themselves, at their peril, of the extent of the authority of such agent, and the present is, certainly, not an occasion in which the rigor of this principle should be in any degree relaxed. The act directs that the evidence of the existence of the authority of the commissioners shall be put upon the public files, so that the fact whether the bonds have a legitimate existence, can be easily and certainly ascertained. If a purchaser takes them without inquiry, and they turn out to be illegal, because a prerequisite has been omitted, the embarrassment of his position is attributable to his own carelessness; and if a loss is to be incurred, it is more just that it should fall upon him rather than upon the public, who is in no default. Under such circumstances, the corporate body cannot be estopped by the acts or declarations of their agents, from impeaching instruments put in circulation, without authority, by such agents. I think all the English, and most of the American authorities can be put on this footing, although it must be admitted that some few of the latter appear to have been decided without adverting to the distinction that exists between the efficacy of acts done by the special agents and those done by the general agents of a corporation; and between the operation of an agency, the extent of which depends on facts known only to the corporate body and its servants, and that of an agency whose scope is marked out by circumstances which are publicly known. In the present case, the plaintiff is chargeable with knowledge of the fact that the commissioners had no lawful authority to put these bonds in the market unless

by force of a vote of the requisite number of land owners, and with knowledge as to the existence or non-existence of such consent. The consequence is, that these several matters are fundamental requisites to the plaintiff's rights of action, and must appear in the declaration. On this ground, the defendant, on this issue, is entitled to judgment.

It is advisable, further, to remark, that an apparent defect exists in this pleading, which is not noticed in the briefs. The fourteenth section of the act requires these bonds to be registered in the county clerk's office, and that the words " registered in the county clerk's office," shall be printed or written across the face of each bond, attested by the signature of the county clerk, when so registered, "and it is then declared that no bond shall be valid unless so registered." The act appears to make this ceremony as essential to the legal existence of the bond, as is either signing or sealing. If this is so, the registration is a fact that the plaintiff would have to prove in making out his case, and consequently, must be shown in the declaration.

To avoid any misapplication of this case, it is proper to add that the question raised in the briefs of counsel, and the point as to the necessity of an averment of the due registration of the bonds, are the only matters which have been considered by the court.

CITED in *Hackensack Water Co.* v. *De Kay,* 9 *Stew. Eq.* 548.